445 So.2d 1242 (1984)
John MORRIS, Plaintiff-Appellee,
v.
SCHLUMBERGER, LTD., et al., Defendants-Appellants.
No. 83-374.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1984.
Rehearing Denied February 29, 1984.
Writ Denied April 23, 1984.
*1244 Scofield, Bergstedt & Gerard, Richard E. Gerard, Jr., Lake Charles, for defendant-appellant-appellee.
Deutsch, Kerrigan & Stiles, Bert M. Cass, Jr., New Orleans, Jones, Tete, Nolen, Hanckey, Swift & Spears, Gregory P. Massey, Lake Charles, for defendant-appellee-appellant.
Onebane and Associates, Frank X. Neuner, Jr., Lafayette, for defendant-appellee.
McHale, Bufkin & Dees, Louis D. Bufkin, Lake Charles, for plaintiff-appellee.
Before STOKER, GUIDRY and CUTRER, JJ.
STOKER, Judge.
This appeal concerns claims of contractual indemnity in connection with third party demands and a reconventional demand.
In the main demand brought in state court pursuant to the Jones Act and general maritime law, John Morris, plaintiff, sought damages for injuries sustained while working aboard an offshore drilling rig owned by his employer, Transworld Drilling Company (Transworld). Named as defendants were Transworld, Phillips Petroleum Company (Phillips) and Schlumberger, Ltd. (Schlumberger).
Schlumberger, which provided wireline and perforation services aboard the Transworld rig for Phillips, the operator of the well, filed a third party demand against Phillips seeking indemnity under a written contract in effect between them. Phillips filed a third party demand against Gilley and Associates, Inc. (Gilley), a contractor hired by Phillips to put a supervisor on the rig, seeking contractual indemnity pursuant to a written contract in effect between them. Gilley filed a reconventional demand against Transworld (in response to a third party demand by Transworld seeking indemnity under a tort theory) seeking indemnity under a written contract existing between Transworld and Phillips.
*1245 Prior to trial, Schlumberger settled with John Morris for $180,000 and was dismissed as a defendant. The jury awarded Mr. Morris $150,000 on the main demand and apportioned fault on a percentage basis as follows: (1) Transworld, 50% at fault, (2) Phillips, 40% at fault, (3) Schlumberger, 10% at fault, and (4) Ray Stevens, Phillips' supervisor on the rig hired through Gilley, 0% at fault. In John Morris v. Schlumberger, Ltd., et al., 436 So.2d 1178 (La.App. 3rd Cir.1983), we resolved issues concerning prejudgment interest, legal interest and solidary liability that related to the main demand. Although in that appeal we noted Gilley was a defendant, it is now our appreciation of the party alignment that Gilley was involved in that suit only as a third party defendant and as a plaintiff in its reconventional demand.
The third party demands of Schlumberger and Phillips and the reconventional demand for Gilley, with which this appeal is concerned, were reserved to the trial judge. In a judgment signed on January 14, 1983, the trial court gave judgment (1) in favor of Schlumberger and against Phillips for $185,000 (representing the settlement of $180,000 plus $5,000 in attorney's fees) and (2) in favor of Gilley and against Phillips, dismissing Phillips' third party demand against Gilley with prejudice. In a separate judgment signed on March 11, 1983, the trial court gave judgment in favor of Transworld and against Gilley, dismissing the reconventional demand of Gilley with prejudice.[1] Phillips and Gilley appeal. We affirm.

THIRD PARTY DEMAND OF SCHLUMBERGER AGAINST PHILLIPS
Phillips urges that the trial court erred (1) in holding that Schlumberger properly tendered its defense to Phillips prior to trial and that the amount of the settlement with plaintiff was reasonable and (2) in awarding Schlumberger attorney's fees under the indemnity contract in the absence of proof thereof. That there was an indemnity agreement in effect between Schlumberger and Phillips is not contested.
On February 19, 1982, Schlumberger filed a third party demand against Phillips seeking full defense and indemnity, including cost of defense, for all claims being made against Schlumberger by the plaintiff in the main demand. This third party demand was based upon an indemnity clause contained within the standard terms and conditions of a Schlumberger service order and work invoice that was signed by Ray Stevens, Phillips' supervisor on the rig.
On March 9, 1982, Schlumberger moved for summary judgment on its third party demand. On May 6, 1982, Phillips filed an answer to the third demand denying liability and refusing to defend and indemnify Schlumberger.
Shortly before the day of trial Schlumberger settled with the plaintiff for $180,000. Pursuing its third party demand, Schlumberger took the position that it was entitled to indemnity for the full $180,000 paid in settlement to the plaintiff and all attorney's fees and costs incurred in defense of plaintiff's claim.
In its reasons for judgment, the trial court found that (1) Schlumberger made a tender of defense to Phillips by filing a third party demand and a motion for summary judgment on its third party demand, (2) that the settlement payment of $180,000 was reasonable in amount, and that (3) Schlumberger was entitled to indemnity from Phillips for the full amount of the settlement. Additionally, based upon the pleadings in the record, the exhibits offered into evidence, the work done under the eye of the court, and the seriousness of the case, the trial court awarded Schlumberger attorney's fees in the amount of $5,000.

Did Schlumberger tender its defense to Phillips and, if so, was the amount of settlement reasonable?
The interpretation of an indemnity clause in a maritime contract is ordinarily *1246 governed by federal maritime law rather than state law. Corbitt v. Diamond M Drilling Co., 654 F.2d 329 (5th Cir.1981). The indemnitee's unilateral act cannot bind the indemnitor without prior notice and an opportunity to defend which are indispensable due process requirements. Jennings v. United States, 374 F.2d 983 (4th Cir. 1967).
Under equitable principles of indemnity, in order for a settling indemnitee to support his indemnity claim he must prove actual liability to the original plaintiff and that the amount paid in settlement was reasonable. To avoid having to prove actual liability, the indemnitee should offer the indemnitor before any settlement is concluded the choice of (1) approving the settlement or (2) taking over the indemnitee's defense. If the indemnitor refuses to take either course, then the indemnitee will only be required to show potential liability to the original plaintiff to support his claim for indemnity. Parfait v. Jahncke Service, Inc., 484 F.2d 296 (5th Cir.1973). There is no rigid requirement that the indemnitee offer the above precise choice to the indemnitor. The primary concern is fairness to the indemnitor. If it can be shown that the indemnitor was afforded substantially the same protection that the above choice affords, then the indemnitee will have to show only potential liability. Burke v. Ripp, 619 F.2d 354 (5th Cir.1980). A formal tender of defense is not required, rather only an opportunity to defend is necessary. Burke v. Ripp, supra.
The indemnity clause in question is silent on the issue of tender and notification, therefore, equitable principles of indemnity apply. Because Phillips has not contested the trial court's finding that the potential liability of Schlumberger was clearly established, if Phillips had an opportunity to defend, refused to do so and Schlumberger thereafter settled, Schlumberger will prevail, provided the amount of settlement was reasonable.
As previously noted, the trial court found that Schlumberger did tender its defense to Phillips prior to settlement through the filing of its third party demand and a motion for summary judgment on its third party demand. The demand was based upon the indemnity agreement existing between them. The facts stipulated to between the parties indicate that under the terms of a contract between Phillips and Transworld, Transworld agreed to defend and indemnify Phillips against all claims made by the plaintiff so long as Phillips continued to direct its efforts "towards defeating the plaintiff's claim and/or proving that the cause of the plaintiff's accident was the negligence of" Schlumberger. Phillips could not abide by the terms of this agreement and at the same time undertake the defense and indemnity of Schlumberger under Phillips' agreement with Schlumberger. That Phillips chose to abide by the terms of the Transworld agreement instead of abiding by its agreement with Schlumberger seems clear from its answer to Schlumberger's third party demand in which it denied liability and refused to defend and indemnify Schlumberger. The trial court, in its reasons for judgment, also found that in addition to the judicial denial made through its answer, Phillips, through all other actions, denied any indemnification obligation to Schlumberger. Given these facts, it was extremely unlikely that Phillips would have seriously considered taking over the defense of plaintiff's claims against Schlumberger.
Furthermore, the stipulated facts also indicate that although Schlumberger may have failed to expressly seek Phillips approval of the settlement, Phillips was continuously kept informed of the settlement negotiations and was afforded sufficient opportunity to approve or disapprove the contemplated settlement. In view of the above circumstances, we find Phillips was adequately protected and should, in fairness, be compelled to indemnify Schlumberger, provided the amount of the settlement was reasonable.
The trial court, in its reasons for judgment, found that the amount of the settlement was reasonable because "It is equally clear that the possibility existed for an award against Schlumberger in an *1247 amount substantially greater than the settlement figure." After reviewing the record and considering the testimony of Dr. Brown, the treating physician, and Dr. Schneider, a reviewing physician, as well as the testimony of John Chisolm, an expert with a doctorate degree in economics, we cannot say that the trial court's findings as to the reasonableness of the amount of settlement were clearly erroneous. This assignment is without merit.
Were attorney's fees properly awarded?
Phillips urges that the award of attorney's fees to Schlumberger under the indemnity contract by the trial judge was improper, or in any event, was incorrect for two reasons: (1) the amount awarded was not substantiated by evidence in the record (i.e., time records, etc.) and (2) the allowance of attorney's fees is limited to those for services rendered in defending the claim that the contract indemnified against and are not allowable for services rendered in enforcing the right to indemnity under the contract.
The trial court, in its reasons for judgment in a very brief statement, held that "after having considered the pleadings in the record, the exhibits offered into evidence, the work done under the eye of the court, and the seriousness of the case; the attorney's fees will be awarded in the amount of $5,000.00."
Schlumberger contends first that the amount of the award is substantiated by the factors that the trial court listed in its reasons for judgment in support of the award, and that under the specific language of the indemnity contract attorney's fees were recoverable both for services rendered in defending the claim indemnified against and for services rendered in enforcing the right to indemnity under the contract. In the alternative, Schlumberger contends that the most substantial part of the pleadings, exhibits offered, and work done under the eye of the court was towards defense of the claim and, therefore, the $5,000 award was justified.
The general rule is that the allowance of attorney's fees is limited to defense of the claim indemnified against, and no recovery can be had for attorney's services and expenses incurred in establishing the right to indemnity. However, when specifically provided for by contract, attorney's fees incurred in establishing the right to indemnity may also be recovered. Dillingham Shipyard v. Associated Insulation Co., 649 F.2d 1322 (9th Cir.1981). See also Signal Oil and Gas Co. v. Barge W-701, 654 F.2d 1164 (5th Cir.1981), cert. denied 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982) and 455 U.S. 944, 102 S.Ct. 1441, 71 L.Ed.2d 656 (1982).
The contract between Schlumberger and Phillips provides for attorney's fees in section 7(b) as follows:
"7(b) Customer [Phillips] further agrees to protect, indemnify and hold us and our officers and employees free and harmless from and against any and all claims, demands, causes of action, suits or other litigation (including all costs thereof and attorney's fees) of every kind and character whenever arising in favor of Customer or any third party ... on account of bodily injury, death, loss of damage to or loss of use of property ... and financial loss of any kind: ..." (emphasis added)
Section (2) of 7(b) goes on to provide:
"(2) in any way by act or omission occurring incident to arising out of or in connection with the presence of our employee or our equipment on premises controlled, leased, operated or owned by Customer, or its agents or contractors..."
We find that under the language of the above contract Schlumberger could recover attorney's fees only for those services and expenses incurred in defense of the claim indemnified against. The contract fails to specifically provide for the recovery of attorney's fees incurred in establishing the right to indemnification.
In our opinion a consideration of the factors listed by the trial court in its reasons for judgment indicates that the trial court had sufficient basis to make some award of attorney's fees. However, in view of our *1248 finding that no attorney's fees may be awarded for services rendered in establishing the right to indemnity, the amount of the award must be based solely on the services rendered in defending the claim. The trial court did not make any breakdown to indicate that it made any allocation between the two types of services. Schlumberger urges that "the most substantial part of the work was performed in defense of plaintiff's claim." On the other hand, in our view, the trial judge may not have considered the defense of the claim services as significant. We do not know what the trial court's views were on this point and it is not appropriate for us to attempt to make any division. Under the circumstances, and since all other matters on appeal will be affirmed, we will remand this case in order that the trial court may amplify and clarify its judgment relative to the award of attorney's fees and to amend the judgment (if necessary) to conform to our views expressed herein.

THIRD PARTY DEMAND OF PHILLIPS AGAINST GILLEY
Phillips urges that the trial court erred in denying its third party demand against Gilley for contractual indemnity.
Phillips needed a person aboard the Transworld rig to supervise and coordinate, on Phillips behalf, the completion of its oil well. Ordinarily these duties would be performed by Phillips' regular "company man." Phillips hired Gilley to furnish an experienced supervisor capable of relieving Phillips' regular company man. Gilley, acting essentially as a labor contractor in that transaction, supplied Phillips with Ray Stevens. At all times, up to and including the day that John Morris was injured, Stevens was employed by both Gilley and Phillips.
To accomplish completion of the Phillips' well, Ray Stevens, acting within his capacity as Phillips' "company man" and on Phillips' behalf, hired Schlumberger to provide wireline and perforation services aboard the Transworld rig. Stevens was on the rig on the day that John Morris was injured.
The contract between Phillips and Gilley, under which Gilley supplied Ray Stevens to Phillips, provided for indemnity in Phillips favor in certain cases. The pertinent language provides:
"Contractor [Gilley] shall indemnify and hold Company [Phillips] harmless from any and all claims ... for injury ... resulting directly or indirectly from any and all acts or omissions of contractor [Gilley], his subcontractors, or of anyone directly or indirectly employed by either of them in connection with the performance of any work provided for herein..." (Emphasis added)
The jury, which awarded Morris $150,000 in damages, found that Ray Stevens, Phillips' supervisor on the job pursuant to the PhillipsGilley contract, was guilty of no negligence. Both Phillips and Schlumberger were found to be negligent.
Under either of two constructions of the contractual language, Phillips argues that Gilley owes indemnity to Phillips. Phillips first argues that the indemnity language "employed by either of them" was clearly satisfied because the result of Stevens hiring of Schlumberger in Phillips behalf was to make Schlumberger and Phillips contractually related. Under this construction the word "them" is taken to refer to "Contractor" [Gilley] and "Company" [Phillips]. Phillips contends that the trial court overlooked this language in denying indemnity to Phillips. Phillips' next argument is that Gilley directly, or at least indirectly, "employed" Schlumberger. Phillips reasons that although Stevens was acting as Phillips' representative in hiring Schlumberger, Stevens nevertheless was still employed by Gilley. Therefore, Gilley through Stevens also "employed" Schlumberger.
In regard to the second construction put forth by Phillips, the trial court, in its reasons for judgment, found that the contract could not be construed to mean that Gilley was responsible for the actions of Schlumberger. The trial court found "Stevens may have played some part in selecting Schlumberger to perform the perforation services but Schlumberger was not employed *1249 by Gilley, not even indirectly" and also found that Stevens represented Phillips as its company man. In view of these findings, the trial court held that Gilley owed no indemnity to Phillips. We agree.
Schlumberger was not directly or indirectly employed by Gilley. Schlumberger was a contractor of Phillips, not of Gilley. Ray Stevens was working within his capacity as company man for Phillips when Schlumberger was hired. Stevens had, as company man, authority from Phillips to hire a wireline and perforation specialist to facilitate completion of the well according to standards put forth by Phillips. Phillips had control over Stevens to the same extent that it would have had over a regular employee. Stevens hired Schlumberger on behalf of Phillips. George Heckler, drilling manager for Phillips, testified that:
"Schlumberger was brought out to perform the perforating operation. In otherwise (sic) we (Phillips) had contracted with Schlumberger for their men and equipment."
It is clear that although Stevens may have selected Schlumberger, that he did so in his capacity as Phillips' employee and, therefore, it was Phillips who "employed" Schlumberger and not Gilley. Gilley was in no way responsible for the actions of Schlumberger on the rig and owes no indemnity to Phillips. The second construction of the PhillipsGilley contract urged by Phillips is without merit.
Since we have determined that Schlumberger was "employed" by Phillips, under Phillips other construction of the contractual language Gilley owes indemnity to Phillips if the word "them" is taken to refer to "Contractor" [Gilley] and "Company" [Phillips]. We reject this interpretation. The word "them" refers to "Contractor" [Gilley] and "his [Gilley's] subcontractors." We agree with Gilley that the obvious intent of the contract was that Gilley would indemnify Phillips if an injury resulted from an act of Gilley, a subcontractor of Gilley, Ray Stevens, or by the combined negligence of Phillips and Ray Stevens or a subcontractor of Gilley. Ray Stevens was found by the jury to be free from negligence. Gilley did not subcontract out its work. This construction of the contract is also without merit.

RECONVENTIONAL DEMAND OF GILLEY AGAINST TRANSWORLD
Gilley urges that the trial court erred in (1) holding that the indemnity provisions of the contract between Transworld and Phillips did not extend to Gilley and (2) in failing to award attorney's fees to Gilley under the indemnity provisions of the contract. Because we find that Transworld does not owe indemnity to Gilley, we do not reach the question of attorney's fees.
Transworld was performing the completion of an oil well in the Gulf of Mexico for Phillips pursuant to a written contract. That agreement, originally between Transworld and Kerr-McGee Corporation, was assigned by the latter to Phillips with Transworld's consent.
A few months after this assignment, John Morris, a Transworld employee, was injured in connection with Transworld's contractual undertaking with Phillips. When the accident occurred, Phillips' job supervisor or "company man" was Ray Stevens. Stevens had been furnished to Phillips by Gilley under a contract between Phillips and Gilley. Gilley is essentially a labor-contractor. Stevens was Phillips' agent and borrowed employee, since he was acting for Phillips under its direction and control. At the same time Stevens was the loaned employee of Gilley.
After being named as defendants by John Morris, Phillips, Transworld and Schlumberger each filed third party demands for indemnity against Gilley. Gilley answered the third party demands and filed a reconventional demand against Transworld for indemnity under a contract existing between Transworld and Phillips.
The indemnity provisions of the Transworld-Phillips contract, upon which Gilley's claim rests, provides in pertinent part:
"11.2 Employees of Contractor [Transworld]. As to any operations contemplated *1250 by this agreement, Contractor [Transworld] shall indemnify and hold harmless Operator [Phillips], its co-owners and joint venturers, and its and their officers, directors, agents and employees, from and against any and all claims, suits or damages ... brought against Operator [Phillips], co-owners and joint venturers, and its and their officers, directors, agents, and employees, or in which Operator [Phillips] ... and its ... agents and employees, may be named as a party defendant by any employee of Contractor [Transworld]." (Emphasis added)
"11.3 Employees of Subcontractor. For the purposes of Section 11.1, any employee of any subcontractor of Operator [Phillips] ... shall be deemed to be an employee of Operator [Phillips] ..."
"11.4 Other Persons. Neither party hereto shall be required to indemnify the other on account of any claims, suits or demands asserted on account of injury to or death of any person not an employee of Contractor [Transworld] or its subcontractor, or of Operator [Phillips], or its subcontractor."
Gilley urges that Transworld has an obligation under these provisions to indemnify Gilley for the attorney's fees and other litigation costs incurred by Gilley in defending against the third party demands because they arose from the alleged negligent acts of Ray Stevens, Phillips' borrowed employee. Gilley contends that the effect of the contract was to require Transworld to indemnify Phillips and its "agents and employees" from any suits brought by employees of Transworld. Gilley claims that when Section 11.3 and Section 11.4 are read in conjunction with Section 11.2, Gilley, through Stevens, is an "agent and employee" of Phillips. However, at this point it should be noted that Section 11.3 is by its own terms limited in application to Section 11.1 and is therefore not applicable to Section 11.2 as we discuss later in this opinion.
The trial court, in its reasons for judgment, found that (1) "An analysis of the agreement, particularly Article [Section] 11.3, indicates that the benefits of indemnity stated in Article, [Section] 11.2, protecting employees and agents, were not intended to extend to subcontractors" and (2) that Gilley "supplied the `company man' on the job through a contractual arrangement and hence was a sub-contractor to the operator (Phillips)." As a result of these findings the trial court held that Transworld owed no indemnity to Gilley, and dismissed Gilley's reconventional demand with prejudice. We agree.
As between Phillips and Gilley, Gilley was clearly a subcontractor of Phillips. Phillips, needing a supervisor to relieve its regular company man on the rig, contracted with Gilley to supply such a person. Gilley furnished Phillips with Ray Stevens. Gilley does not appear to contest this relationship with Phillips in its brief, rather Gilley claims that under the indemnity provisions of the contract, Gilley is also, through Ray Stevens, an "agent and employee" of Phillips.
Gilley's reliance on Section 11.3 and Section 11.4 is misplaced. An analysis of these sections in view of Section 11.2, convinces us that Gilley is not an "agent and employee" of Phillips under the contract but rather remained a subcontractor of Phillips, and that the indemnity obligations of Transworld under Section 11.2 were not intended to extend to subcontractors. The only places within the indemnity provisions where a reference of any kind is made to a "subcontractor" is in Sections 11.3 and 11.4. The omission of any reference to a "subcontractor" in Section 11.2 is therefore particularly significant. This shows the parties to the contract, Transworld and Phillips, intended to exclude subcontractors from among those to whom Transworld might owe any indemnity obligation.
Although Section 11.3 provides that any employee of Gilley (a subcontractor of the operator) is deemed to be an employee of Phillips (the operator), the application of this section is specifically limited to Section 11.1. Section 11.1 is a reciprocal agreement on Phillips' part to provide for indemnity to Transworld. It is the counterpart to Transworld's indemnity obligation to Phillips under Section 11.2. It simply *1251 means that if Ray Stevens was injured that Phillips would agree to indemnify Transworld if Stevens sued Transworld.
Section 11.4 must be read in conjunction with Section 11.3, the only other place within the indemnity provisions which contains a reference to "subcontractor." Its meaning is that Phillips will not owe any indemnity to Transworld unless Transworld is sued by either an employee of Phillips or an employee of Gilley (a subcontractor of Phillips).
Neither Section 11.3 nor Section 11.4 have any reference whatsoever to Section 11.2, which sets forth the indemnity obligations of Transworld. In view of the omission of any reference in any form to "subcontractors" in Section 11.2, and in view of our findings with respect to Sections 11.3 and 11.4, we hold that Transworld owes no indemnity to Gilley.
For the reasons assigned we affirm the judgments of the trial court (1) in favor of Schlumberger, Ltd. and against Phillips Petroleum Company for $185,000, (2) in favor of Gilley and Associates, Inc. and against Phillips Petroleum Company and (3) in favor of Transworld Drilling Company and against Gilley and Associates, Inc. We reverse and set aside the award of attorney's fees in favor of Schlumberger, Ltd. and against Phillips Petroleum Company in the amount of $5,000 and remand this case to the trial court for further proceedings relative to the demand for attorney's fees and for disposition consistent with the views expressed herein.
The costs of this appeal are to be divided between Phillips, Schlumberger and Gilley on the basis of one-sixth to be paid by Schlumberger, Ltd., three-sixths to be paid by Phillips Petroleum Company, and one-third to be paid by Gilley and Associates, Inc.
REVERSED IN PART AND REMANDED; AFFIRMED IN PART.

ON APPLICATION FOR REHEARING
PER CURIAM.
Phillips Petroleum Company has applied for a rehearing in this case which we deny. However, among the matters on which Phillips bases its application is the contention that we erred in the conclusion of our opinion on rehearing wherein we affirmed the judgment in favor of Schlumberger, Ltd. and against Phillips for the amount of $185,000. This complaint is well taken. As we note in our original opinion Schlumberger's basic claim is for the amount of its settlement which was $180,000. The sum of $5,000 represented attorney's fees awarded to Schlumberger. As we reversed the award of attorney's fees and remanded this issue to the trial court for clarification of its judgment, our affirmance of Schlumberger's judgment against Phillips should have extended only to $180,000. Accordingly, we amend our original opinion, particularly the decree rendered therein, to reflect this correction.
With the correction, Phillips' application for rehearing is denied.
APPLICATION FOR REHEARING DENIED.
NOTES
[1] The trial court inadvertently termed Gilley's action against Transworld as a third party demand.