996 So.2d 584 (2008)
Aguillard SANCHEZ
v.
HARBOR CONSTRUCTION CO., INC.
Harbor Construction Co., Inc.
v.
Global Fabrication & Welding Contractors, LLC.
Nos. 2008-CA-0316, 2008-CA-0317.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 2008.
*585 Richard S. Vale, Pamela F. Noya, Blue Williams, L.L.P., Metairie, LA, for Harbor Construction Co., Inc.
Patrick H. Patrick, Patrick Miller, L.L.C., New Orleans, LA, for Global Fabrication & Welding Contractors, LLC.
(Court composed of Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE, Judge DAVID S. GORBATY).
TERRI F. LOVE, Judge.
Aguillard Sanchez was the borrowed employee of the Harbor Construction Co., Inc. at the time of his personal injury; thereafter, he was awarded benefits under the Longshore and Harbor Workers' Compensation Act. Global asserts that Harbor is liable for benefits as a borrowing employer, and seeks reimbursement. Harbor denies the claim, alleging that the contract contains a valid and enforceable indemnification agreement. We find the contract language unambiguous and devoid of an indemnity provision.
We, therefore, hold that the contractual language does not constitute a "valid and enforceable indemnification agreement" that relieves Harbor of its obligation to reimburse Global for compensation benefits Global paid to Mr. Sanchez. Finding no error in the trial court's granting of the Cross-Motion for Summary Judgment in favor of Global, we affirm.

*586 FACTUAL AND PROCEDURAL HISTORY
The instant facts are as we stated in Sanchez v. Harbor Const. Co., Inc., 07-0234, p. 1 (La.App. 4 Cir. 10/3/07), 968 So.2d 783, 784:
"Global Fabrication and Welding ("Global") is a temporary labor service that supplies Harbor with workers on an `as needed' basis. Harbor is a general construction company. On August 8, 2002, Harbor contacted Global and requested a welder for the next day. On August 9, 2002, Global sent Mr. Sanchez to Harbor's jobsite, which was at the Napoleon Avenue Wharf. Global instructed Mr. Sanchez to report to Harbor's foreman. On his first day on the job, Mr. Sanchez was injured when a 500,000 gallon diesel fuel tank fell from the forklift that one of Harbor's employees, Mr. Nguyen, was operating."
Aguillard Sanchez ("Mr. Sanchez") filed a civil claim against Harbor Construction Company ("Harbor"), its insurer and one of its employees. The defendants moved for summary judgment, arguing that Mr. Sanchez was the borrowed servant of Harbor and that his exclusive remedy was the Workers' Compensation Act. That Motion for Summary Judgment was granted and this Court affirmed the ruling in Sanchez, 07-0234, p. 1, 968 So.2d 783.[1]
Thereafter, Mr. Sanchez filed a claim under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 904 et seq., seeking benefits from Global Construction Company ("Global") and Harbor. Mr. Sanchez sued his employer, Global, and its workers' compensation carrier for benefits. Global then asserted that as a borrowing employer, Harbor was liable for benefits. After an administrative proceeding, the administrative law judge ("ALJ") found that Mr. Sanchez was entitled to temporary total disability benefits. The ALJ also ordered that Harbor and its carrier reimburse Global and its carrier for all benefits previously paid Mr. Sanchez.
Global also asserts that as the "borrowing employer" of Sanchez, Harbor and its workers' compensation carrier are liable unto Global and its workers' compensation carrier for reimbursement of the benefits that Global and its carrier have previously provided. The ALJ found that the question of whether a contract between Global and Harbor contains a valid and enforceable indemnification agreement that would serve as a bar to Global's and its carrier's reimbursement claim against Harbor is an issue that must be determined by a court of general jurisdiction.
Harbor filed a declaratory action against Global to have the trial court interpret the parties' contract. That declaratory action was consolidated with the previous matter that addressed the borrowed servant issue. Harbor and Global moved for summary judgment.
The trial court denied Harbor's Motion for Summary Judgment and found that Global was not contractually liable for workers' compensation benefits due to Mr. Sanchez. The trial court based its finding on the absence of a "valid and enforceable indemnification agreement" in the contract. The trial court also granted a Cross-Motion for Summary Judgment in favor of Global. Harbor filed a supervisory writ from the denial of its Motion for Summary Judgment, which was denied by this Court, citing that Harbor had an adequate *587 remedy on appeal. Subsequently, Harbor filed this appeal to address the denial of its Motion for Summary Judgment and the granting of Global's Cross-Motion for Summary Judgment.

STANDARD OF REVIEW
"Favored in Louisiana, the summary judgment procedure `is designed to secure the just, speedy, and inexpensive determination of every action' and shall be construed to accomplish these ends." King v. Parish Nat'l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)). An appellate court reviews a district court's decision granting summary judgment de novo, using the same standard applied by the trial court in deciding the motion for summary judgment. Schmidt v. Chevez, 00-2456, p. 4 (La.App. 4 Cir. 1/10/01), 778 So.2d 668, 670. Under this standard, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).

INDEMNIFICATION AGREEMENT
The issue before this Court is whether the Master Service Agreement ("contract") between Harbor and Global contains a valid and enforceable indemnification agreement that would serve to bar Global's reimbursement claim in the LHWCA administrative proceeding. Harbor argues that the language of the contract provides indemnity and was breached by Global in not procuring insurance that extended to the liabilities of Harbor as a borrowing employer. Harbor contends that the effect of the contract was to require Global to indemnify Harbor from workers' compensation suits brought by employees of Global.
Global counters that the contract merely requires Global to procure insurance covering its own workers' compensation obligations. Global maintains that the contract does not require Global to indemnify Harbor nor to insure the obligations of Harbor as an LHWCA employer. Under Global's line of reasoning, Harbor must reimburse Global for any compensation benefits paid by or on behalf of Global to Mr. Sanchez.
In the administrative proceeding, the ALJ determined that Harbor was liable for reimbursing Global for its payment of Mr. Sanchez's claims. The ALJ also determined that the question of whether there were contractual grounds for relieving Harbor of this liability hinged on whether "a valid and enforceable" indemnification agreement between the parties existed. The ALJ stated that this inquiry was an appropriate issue for a state court to decide.
Harbor argues that the Louisiana workers' compensation statute, La.Rev.Stat. 23:1031, allows lending and borrowing employers to contractually agree who is to bear the liability for compensation for the borrowed employee and that the same rule applies under federal law. Global contends that whereas Louisiana state workers' compensation holds the lender and the borrower jointly and solidarily liable for benefits, the federal LHWCA rule places sole liability on one employer and, in the instance of a borrowed employee, the liable employer is the borrowing employer. Given that La.Rev.Stat. 23:1031 governs Louisiana state workers' compensation issues, we find it inapplicable in the instant matter.
Under the LHWCA "a borrowing employer is required to pay the compensation benefits of its borrowed employee, and, in the absence of a valid and *588 enforceable indemnification agreement, the borrowing employer is required to reimburse an injured workers' formal employer for any compensation benefits it has paid to the injured worker." (Emphasis added). Total Marine Services, Inc. v. Director, OWCP (Arabie), 87 F.3d 774 (5th Cir.1996).
The contract between Global and Harbor is the law between those parties and they are bound to their agreement. "Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed." Naquin v. Louisiana Power and Light Co., 05-2104, p. 4 (La.App. 1 Cir. 11/17/06), 951 So.2d 228, 231. "The general rules governing contract interpretation apply in construing a contract of indemnity." Id. "When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose." (Emphasis added). La. Civ.Code art. 2054.
In Darty v. Transocean Offshore U.S.A., Inc., 03-1669 (La.App. 4 Cir. 5/12/04), 875 So.2d 106, we determined whether a reciprocal indemnity provision clearly and unequivocally provided indemnification. In this Court's analysis, we considered Theriot v. Bay Drilling Corp., 783 F.2d 527, 540 (5 Cir. 1986), which provided:
"Long-established general principles of interpreting indemnity agreements require that indemnification for an indemnitee's own negligence be clearly and unequivocally expressed." Seal Offshore, Inc. v. American Standard, Inc., 736 F.2d 1078, 1081 (5th Cir.1984). An indemnity provision should be construed to cover "all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties." It should not be read, however, "to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." Corbitt v. Diamond M. Drilling Co., 654 F.2d at 333. (Emphasis added).
Darty v. Transocean Offshore U.S.A., Inc., 03-1669 (La.App. 4 Cir. 5/12/04), 875 So.2d 106.
The pertinent provision in the contract reads: "GFWC [Global] agrees to provide workers' compensation and general liability coverages within the limits required by the client [Harbor]." The operative provision of the Global-drafted contract failed to expressly provide for indemnity. In view of the contract as a whole and the omission of any reference in any form to "indemnity" in the contract provision, we conclude that the only reasonable interpretation of the contract is that Global would only be required to carry workers' compensation insurance.
Based on our review of the record, we find that the contract does not contain terms providing indemnity to Harbor in the manner purported. Harbor's assignment of error does not have merit and we conclude that the trial court was correct in granting the Motion for Summary Judgment in favor of Global.

PAROL EVIDENCE
Harbor submits that while the terms and conditions of the contract are unambiguous, even if there were any ambiguity, it is dissipated by the parol evidence submitted. Harbor argues that the trial court had sufficient evidence to determine the *589 parties' intent and grant summary judgment in its favor, and contends that the trial court erred in not so ruling.
Although Harbor requests that this Court look outside the contract to determine whether its indemnification claim is valid, we find no reason to do so. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code art. 2046. Further, though a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. La. Civ.Code art. 2051. The meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. Bourgeois, Bennett, L.L.C. v. Gauthier, Downing, Labarre, Beiser and Dean, a PLC, et al., 07-842 (La.App. 5 Cir. 3/11/08), 982 So.2d 127, 127 (citing La. Civ.Code art. 1848).
The contract between Global and Harbor must be given its plain and common sense meaning. In reviewing the contract as a whole, we find that the broad language utilized in the contract is unambiguous and does not expressly indemnify Harbor for Mr. Sanchez's claims. Rather, we conclude that the agreement between the parties depicts an arrangement whereby Global, as a labor pool employer, provides employees to Harbor, and, as part of that arrangement, Global provides the workers' compensation insurance. Therefore, parol evidence is inadmissible to vary the contract.

DECREE
From our de novo review of the record, we find that there exists no genuine issue of material fact. From the law as cited above, we hold that Global is entitled to summary judgment as a matter of law. The judgment of the trial court is affirmed.
AFFIRMED.
MURRAY, J., concurs and assigns reasons.
MURRAY, J., concurs and assigns reasons.
The sole issue before this court is whether the contract between Harbor and Global contains a "valid and enforceable indemnification agreement," in the absence of which the borrowing employer (Harbor) is required to reimburse the formal employer (Global) for LHWCA benefits it has paid to the injured employee. See Temporary Employment Services v. Trinity Marine Group, Inc., 261 F.3d 456, 463-64 (5th Cir.2001) (quoting Total Marine Services, Inc. v. Director, Office of Worker's Compensation Programs, 87 F.3d 774, 779 (5th Cir.1996)). It is well established that indemnity language in a contract must expressly and unambiguously relieve the indemnitee of the liability at issue. See Roberts v. Williams-McWilliams Co., Inc., 648 F.2d 255, 264 (5th Cir.1981). The provision in the instant contract merely states that Global will "provide workers compensation and general liability coverages within the limits required by [Harbor]." I agree with the majority that this language is insufficient to provide indemnity and does not constitute a valid indemnification agreement under Louisiana or federal law.
Accordingly, I respectfully concur in the affirmation of the trial court's judgment.
NOTES
[1] In parallel administrative proceedings under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., ("LHWCA"), it has been stipulated that Sanchez was Harbor's borrowed LHWCA employee.